# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO-CLC, and UNITED STEELWORKERS LOCAL 11-470, <br><br> Plaintiffs, <br><br> vs. <br><br> EXXON MOBIL CORPORATION, <br><br> Defendant. | CV-14-35-BLG-CSO <br><br> **ORDER ADDRESSING CROSS MOTIONS FOR SUMMARY JUDGMENT** |

This is an action to compel arbitration. Plaintiffs United Steel,
Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial
and Service Workers International Union, AFL-CIO-CLC, and United
Steel Workers Local 11-470 (collectively "the Union"), proceeding under
Section 301 of the Labor Management Relations Act ("LMRA"), 29
U.S.C. § 185, seek to compel arbitration of a grievance with Defendant
Exxon Mobil Corporation ("ExxonMobil") under the parties' collective

1

bargaining agreement ("CBA"). *Cmplt. to Compel Arbitration (ECF 1).*

Before the Court are the parties' cross motions for summary judgment. *Union's Mtn. (ECF 17) and ExxonMobil's Mtn. (ECF 20).*

## I. __BACKGROUND__[1]

The Union represents certain employees at ExxonMobil's oil refinery in Billings, Montana. *Stmt. of Stipulated Facts (ECF 12) at ¶¶ 1, 3.* The Union and ExxonMobil are parties to a CBA effective February 1, 2012, through January 31, 2015. *Id. at ¶ 6.*

The CBA's Article XIII sets forth a grievance procedure

> [t]o provide an orderly method for adjusting disputes involving the interpretation of the provisions of [the CBA], or claims by either party of a violation of the terms of [the CBA], or claims of unfair treatment involving either an interpretation or violation of the terms of [the CBA] . . . .

*ECF 12-1 at 30.* The grievance procedure includes three steps, including time limits and conditions within each step, for resolving disputes. *Id.*

---

[1]The background facts are undisputed unless otherwise noted. The Court has taken them from the parties' Statement of Stipulated Facts. *See ECF 12.* Attached to the parties' Statement of Stipulated Facts are stipulated exhibits, including the parties' CBA. *See Exhibit A (ECF 12-1).*

The CBA also contains an arbitration provision in Article XIV, which provides, in part, as follows:

> Any question as to the interpretation of the terms of [the CBA] or any question of fact arising out of an alleged violation of the terms of [the CBA] which is not otherwise settled, shall at the request of either party, be submitted to an arbitrator[.]

*Id. at 32.* Article XIV includes provisions describing the arbitration process. *Id.*

The CBA covers the position of "in-plant janitor." *ECF 1 at ¶ 8; Answer (ECF 6) at ¶ 8.* In February 2013, the employee in the in-plant janitor position retired. Before his retirement, ExxonMobil announced its intent to hire contractors to perform the work formerly done by the in-plant janitor, rather than fill the position with a bargaining unit employee. *ECF 12 at ¶ 8.*

On December 13, 2012, the Union filed a Request for First Step Grievance Meeting. *Id. at ¶ 9.* It stated, in relevant part:

> A contractor is performing the in-plant janitor work and the in-plant janitor position is being left vacant. This very issue was the subject of a previous grievance and arbitration. The grievance was sustained by the arbitrator.

*ECF 12-2.* ExxonMobil denied the request on the same day. *Id.; see*

*also ECF 12-2.*

On December 18, 2012, the Union filed a Request for Second Step

("Step 2") Grievance meeting accompanied by a Grievance Report

("grievance"). *ECF 12 at ¶ 10.* It stated, in relevant part:

> The in-plant janitor position is being left vacant and
> contractors are performing the work of the in-plant janitor
> position. This very issue was the subject of a previous
> grievance and arbitration. The grievance was sustained by
> the arbitrator.

*ECF 12-3.*

On January 8, 2013, the Union and ExxonMobil had a Step 2

meeting. *Id. at ¶ 11.* On January 15, 2013, ExxonMobil provided the

Union with its Step 2 response to the grievance, stating:

> In reviewing the arbitration referenced by the Union, the
> dispute was over a letter agreement written during 1986
> contract negotiations. This agreement is no longer in effect
> and the 2012 Collective Bargaining agreement language
> allows the Company to contract out this work, per Article
> XX.
> Therefore, I deny this grievance.

*ECF 12-4.*

The CBA's Article XX, titled "Contract Work", provides:

> [The CBA] shall not limit the right of [ExxonMobil] to
> contract out work so long as such contracting does not cause

a layoff of employees covered by [the CBA].

*ECF 12-1 at 38.*

On January 16, 2013, the Union appealed the grievance to Step 3.

*ECF 12 at ¶ 13; ECF 12-5.* On January 23, 2013, the Union and

ExxonMobil had a Step 3 meeting. *ECF 12 at ¶ 14; ECF 12-6.*

On January 30, 2013, ExxonMobil provided the Union with its

Step 3 response to the grievance. *ECF 12 at ¶ 15.* ExxonMobil denied

the grievance, stating:

> The 1994 arbitration referenced during the Step 3 meeting,
> was based on the language on a 1986 letter agreement and
> the 1988 CBA. Since then, the contract was renegotiated in
> 2012 and specifically Article XX, at which time, the parties
> agreed to the language "The agreement shall not limit the
> right of the Company to contract out work so long as such
> contracting out does not cause a layoff of employees covered
> by this agreement." At the time the arbitrator based his
> decision on the letter agreement. The 1986 letter agreement
> does not exist today. Therefore, in this situation Article XX
> is applicable and the Company has complied with it.

*ECF 12-6.*

On April 24, 2013, the Union requested that the grievance be

submitted to arbitration and proposed the questions to be submitted to

the arbitrator. *ECF 12 at ¶ 16; ECF 12-7.*

On May 22, 2013, ExxonMobil proposed a different question be submitted to the arbitrator. *ECF 12 at ¶ 17; ECF 12-8.*

On June 27, 2013, the Union proposed a different question be submitted to the arbitrator. *ECF 12 at ¶ 18; ECF 12-9.*

On July 10, 2013, ExxonMobil proposed that the arbitrator decide the question. *ECF 12 at ¶ 19; ECF 12-10.*

On July 24, 2013, the Union stated that it would let the arbitrator decide the question for arbitration and that it would contact the Federal Mediation and Conciliation Service. *ECF 12 at ¶ 20; ECF 12-11.*

On December 19, 2013, ExxonMobil informed the Union that it did not believe the Union's grievance was arbitrable. *ECF 12 at ¶ 21; ECF 12-12.* The Union did not agree with ExxonMobil's position and, on March 18, 2014, filed this action to compel arbitration of the grievance. *ECF 12 at ¶ 22; ECF 1 at 1.*

## II.   <u>JURISDICTION</u>

The parties jointly represent that: (1) the Union is comprised of labor organizations representing employees in an industry affecting

commerce; (2) ExxonMobil is engaged in an industry affecting commerce and is an employer of employees at an oil refinery in Billings, Montana; and (3) the CBA to which the Union and ExxonMobil are parties is a contract between a labor organization and an employer. *ECF 12 at ¶¶ 1-3, 6-7.*

Thus, this Court has jurisdiction under Section 301 of the LMRA, 29 U.S.C. § 185, which permits "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ...." This Court also has jurisdiction under 28 U.S.C. §§ 1331 and 1337. By Notice filed May 8, 2014, upon the parties' written consent, this matter was assigned to the undersigned for all proceedings. *Notice of Assignment (ECF 10).*

## III. <u>PARTIES' ARGUMENTS</u>

### A. <u>The Union</u>

The Union argues that the Court should compel arbitration. It maintains that the CBA contains a broad arbitration provision that creates a strong presumption that the Union's grievance with ExxonMobil is arbitrable. *Union's Opening Br. (ECF 19) at 11-15.*

The Union advances two specific arguments.  First, the Union argues that the CBA's arbitration provision grants the arbitrator the power to resolve any question as to the interpretation of the terms of the CBA.  To avoid arbitration, the Union argues, ExxonMobil must establish, by "positive assurance," that the grievance and arbitration clauses cannot be interpreted to cover the dispute by identifying "an express exclusion" or "the most forceful evidence" that the dispute is to be excluded from arbitration.  *Id. at 12*.  The Union further argues that the Court, in considering whether ExxonMobil has satisfied this burden, must confine its inquiry to whether the Union's claim, on its face, is covered by the CBA.  *Id*.  In doing so, the Union argues, the Court need not consider the claim's merits nor even look to the CBA's substantive provisions except as necessary to consider exclusions to the arbitration clause.  *Id. at 12-13*.  Rather, the Union argues, this case presents a procedural question not for the Court but for an arbitrator to decide.  *Id. at 14-15*.

Second, in noting that its grievance contests ExxonMobil's contracting out of bargaining-unit work, the Union argues that two

CBA clauses concern work preservation: (1) Article XVI, Section 6, which provides that ExxonMobil "will not erode the bargaining unit by job reduction ...[,]"; and (2) Article XX, which provides that the CBA "shall not limit the right of [ExxonMobil] to contract out work so long as such contracting does not cause a layoff of employees covered by [the CBA]." *Id. at 13* (referring to *ECF 12-1 at 36 and 38*).

The Union argues that neither of these provisions limits the reach of the CBA's grievance and arbitration clauses. Thus, the Union argues, "the subject matter of the grievance is covered by the CBA and neither the arbitration clause nor any other clause of the [CBA] limits the extent of the broad arbitration provision to exclude from arbitration a grievance contesting the contracting-out of bargaining-unit work." *Id*.

## B. <u>ExxonMobil</u>

ExxonMobil agrees that the CBA contains a broadly-worded arbitration clause. It further agrees that, under such circumstances, courts normally apply a presumption that a dispute is subject to arbitration. But, ExxonMobil maintains, in deciding whether to invoke the presumption, the Court must be mindful that arbitration is "strictly

a matter of consent." *ExxonMobil's Opening Br. (ECF 21) at 9.* Thus, the Court may order arbitration of a dispute "only where the court is satisfied that the parties agreed to arbitrate that dispute." *Id.* (emphasis omitted). And, ExxonMobil argues, a party contesting arbitration can prevail by either: (1) pointing to an express provision in the CBA excluding a particular grievance from arbitration; or (2) introducing "most forceful evidence of a purpose to exclude the claim from arbitration." *Id. at 10-11.* ExxonMobil argues that it can satisfy both factors.

First, ExxonMobil argues that the CBA's plain language precludes arbitration of the Union's grievance. *Id. at 11.* It argues that the CBA's arbitration provision covers only two types of disputes: (1) those concerning interpretation of the CBA's terms; and (2) questions of fact stemming from an alleged violation of the CBA's terms. *Id. at 11-12.* Because this case involves neither type of dispute, ExxonMobil argues, the dispute is not arbitrable. Specifically, it argues, Article XX unambiguously provides that the CBA "shall not limit" ExxonMobil's right to contract out work that does not result in layoffs – including not

limiting it by forcing it to arbitrate when its act of contracting out work indisputably did not result in layoffs. *Id. at 12-13.* In other words, ExxonMobil argues, "when it is undisputed that [its] contracting-out decision does not result in layoffs, the analysis is over." *Id. at 13-14.* The merits of the underlying dispute, it argues, are irrelevant because Article XX forecloses the Union's claim for arbitration. *Id. at 14-15.*

Second, ExxonMobil argues that the parties' bargaining history precludes arbitration of the Union's grievance. *Id. at 15-17.* It argues that in negotiating the CBA, modifying Article XX to avoid disputes was of paramount importance to ExxonMobil. The Union was "well aware of ExxonMobil's intent and extracted significant benefits in exchange[ ]" for agreeing to Article XX's language. *Id. at 16.* The parties' bargaining history, therefore, evidences "a clear purpose to avoid arbitration over contracting-out decisions that do not result in layoffs[.]" *Id. at 17.* Thus, ExxonMobil argues, it did not consent to arbitration of the instant dispute. *Id.*

## IV. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the opposing party will have the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case. *Id.*

When parties file cross-motions for summary judgment, as here, the Court must consider each motion on its own merits. *Fair Housing*

*Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136

(9th Cir. 2001).  The fact that both parties have moved for summary

judgment does not vitiate the Court's responsibility to determine

whether disputed issues of material fact are present.  *Id.*

### B.  <u>Standard for Determining Arbitrability</u>

"[A]rbitration is a matter of contract[.]"  *Goldman, Sachs & Co. v.

City of Reno*, 747 F.3d 733, 739 (9th Cir. 2014) (*quoting Rent–A–Center,

W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).   Courts must place

arbitration agreements on an equal footing with other contracts, and

enforce them according to their terms.  *Id.* (*quoting AT & T Mobility

LLC v. Concepcion*, ___ U.S. ___, 131 S.Ct. 1740, 1745 (2011)).

The Supreme Court's arbitration decisions have emphasized as

their "first principle" that "[a]rbitration is strictly a matter of consent

and thus is a way to resolve those disputes – *but only those disputes* –

that the parties have agreed to submit to arbitration."  *Id.* (*quoting

Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010)

(emphasis in original*)* (internal quotation marks and citations

omitted)).  In determining whether parties have agreed to submit to

arbitration, courts are to "apply general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Id.* (*quoting Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (internal quotation marks and citations omitted)).

Where, as here, the CBA contains a very broad arbitration provision, ExxonMobil agrees that it can prevail in either of two ways. *ECF 21 at 10-11.* First, it may point to an express provision excluding a particular grievance from arbitration. *See United Steel Workers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. at 584-85.* And, ExxonMobil "bears the burden of demonstrating how the language in the collective bargaining agreement excludes a particular dispute from arbitration." *Std. Concrete Prods. Inc. v. Gen. Truck Drivers,* Office, *Food and Warehouse Union, Local 952*, 353 F.3d 668, 674 (9th Cir. 2003). Alternatively, ExxonMobil may introduce "forceful evidence" of a purpose to exclude the claim from arbitration. *Warrior & Gulf, 363 U.S. at 584-85.*

## C.    Analysis

First, there is no dispute about the valid formation of the CBA
which includes the broadly written arbitration clause.  The parties
agree that the CBA has been in effect during the relevant time frame.
*ECF 12 at ¶ 6.*

Second, the arbitration provision requires that, at the request of
either party, "[a]ny question as to the interpretation of the terms of this
Agreement ... [shall] be submitted to an arbitrator...."  *ECF 12-1 at 32.*
Where there is such a broad arbitration clause in a CBA, the
presumption of arbitrability is "particularly potent."  *Dennis L.
Christensen General Bldg. Contractor, Inc. v. General Bldg. Contractor,
Inc.,* 952 F.2d 1073, 1077 (9th Cir. 1991).  The dispute here does raise
questions as to the interpretation of the terms of the CBA.  The Union
contends that the CBA's Art. XVI, section 6 governs to resolve the
dispute, whereas ExxonMobil contends that the CBA's Art. XX governs
to resolve the dispute.  "A case is most clearly arbitrable under the
terms of an agreement ... when the union alleges a concrete violation of
the agreement and interpretation or application of the agreement is

required to resolve the dispute." *Aluminum Co. of America v. International Union, United Auto, Aerospace and Agr. Implement Workers of America*, 630 F.2d 1340, 1343 (9th Cir. 1980).

Third, the Court thus must determine whether there is an express provision that limits the arbitration agreement's applicability to this dispute. As noted, ExxonMobil seeks to rebut the presumption of arbitrability with the argument that the CBA's Article XX unambiguously provides that the CBA "shall not limit" – including by compelling arbitration – ExxonMobil's right to contract out work provided doing so does not result in layoffs, *ECF 21 at 11-15*. But the Court concludes that Article XX does not contain, as ExxonMobil argues, an express provision limiting the scope of the arbitration clause. Arbitrability is not mentioned in Article XX. As a sophisticated party, ExxonMobil presumably would know how to craft an express provision clearly limiting the scope of the arbitration clause. *See, e.g., Contra Costa Legal Assistance Workers v. Contra Costa Legal Services Foundation,* 878 F.2d 329, 330 (9th Cir. 1989) (holding that grievance was excluded from arbitration where CBA provided "such action may

not be raised as a grievance under this Agreement").

Courts recently have continued to make clear that "any exclusion from coverage by an agreement's arbitration provisions should not be inferred from the language of the agreement, but *must be stated explicitly in the agreement." International Broth. of Elec. Workers Local 2150 v. Nextera Energy Point Beach, LLC*, 762 F.3d 592 (7th Cir. 2014) (*emphasis in original*) (*quoting Ceres Marine Terminals, Inc. v. Intern. Longshoremen's Ass'n, Local 1969, AFL_CIO*, 683 F.2d 242, 247 (7th Cir. 1982)).

Additionally, ExxonMobil's argument would involve this Court in the merits of the dispute. Even where the Court may agree with ExxonMobil on the merits, or where the Court may agree that the Union's position is frivolous, the Court may not circumvent the initial question whether ExxonMobil has breached its promise to arbitrate such disputes. Courts are not to determine the merits of a grievance under the guise of deciding questions of arbitrability, but have the duty only to determine whether a party has breached its promise to arbitrate. *United Food and Commercial Workers Union, Local 770 v.*

*Geldin Meat Co.,* 13 F.3d 1365, 1368 (9th Cir. 1994).  In *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, the Supreme Court was presented with a similar dispute involving the contracting out of work.  The Court wrote:

> A specific collective bargaining agreement may exclude contracting from the grievance procedure.  Or a written collateral agreement may make clear that contracting out was not a matter for arbitration.  In such a case a grievance based solely on contracting out would not be arbitrable.  Here, however, there is no such provision. ...  In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail where, as here, the exclusion clause is vague and the arbitration clause quite broad.  Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provision of a labor agreement....

*Id. 363 U.S. 574, at 584-85 (1960).*

Finally, ExxonMobil argues that the parties' bargaining history demonstrates ExxonMobil's intent to have the right to contract out work without having to face arbitration each time it does so, *id. at 15-17*.  The Court is not persuaded.

The bargaining history offered by ExxonMobil reveals no discussion regarding exclusion of the present dispute from the

arbitration clause. For example, although it is clear from Jill Quade's affidavit that there was substantial negotiation regarding the question of ExxonMobil's contracting out work, the affidavit is silent as to any specific discussion of excluding such issues from arbitration. *ECF 23 at 2-6.* And, although ExxonMobil now argues that this bargaining history conveys a "clear intent" to grant ExxonMobil the right to contract out work without having to face an arbitration each time it does so *(ECF 21 at 15),* this "clear intent" was not sufficiently clear to ExxonMobil itself. ExxonMobil engaged in the CBA's grievance process for several months beginning in December 2012, and for approximately seven months thereafter it exchanged correspondence with the Union as to how the question regarding this dispute should be submitted to the arbitrator – all without objecting until December 2013 that the dispute was excluded from the scope of the CBA's arbitration provision. *ECF 12 at 4 ¶16 to 5 ¶ 21.*

Thus, the Court concludes that ExxonMobil has not borne its burden to show that there is an express provision excluding the dispute from the broadly worded arbitration clause, nor has it demonstrated

"forceful evidence" of a purpose to exclude the claim from arbitration.

V.     <u>**CONCLUSION**</u>

Based on the foregoing, IT IS ORDERED that the Union's summary judgment motion (*ECF 17*) is GRANTED and ExxonMobil's summary judgment motion (*ECF 20*) is DENIED.  ExxonMobil is required to proceed to arbitration of this dispute under the provisions of the CBA.

The Clerk of Court is directed to enter Judgment accordingly.

DATED this 15th day of December, 2014.


<u>/s/ Carolyn S. Ostby</u>
United States Magistrate Judge